| | | |
|---|---|---|
| SPORTS STADIUM MOTEL, L.L.C., NATAVERLAL PATEL, MAYUR PATEL, and RASHILABEN PATEL | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. |
| CITY OF INDEPENDENCE, MISSOURI,    Serve: City Clerk        111 E. Maple Ave.        Independence, MO 64050, | ) ) ) ) ) ) ) | Div. |
| REGULATED INDUSTRIES DIVISION OF THE COMMUNITY DEVELOPMENT DEPARTMENT OF THE CITY OF INDEPENDENCE, MISSOURI    Serve: City Clerk        111 E. Maple Ave.        Independence, MO 64050, | ) ) ) ) ) ) ) ) ) ) | |
| COMMUNITY DEVELOPMENT DEPARTMENT OF THE CITY OF INDEPENDENCE, MISSOURI    Serve: City Clerk        111 E. Maple Ave.        Independence, MO 64050, | ) ) ) ) ) ) ) ) | |
| And | ) ) | |
| JILL M. DODSON    Serve: 1423 NE 96th Terrace        Kansas City, MO 64155, | ) ) ) ) | |
| Defendants. | ) | |

**COMPLAINT**
(Administrative Review and Other Relief)

Plaintiffs Sports Stadium Motel, L.L.C. ("**SSM**"), Nataverlal Patel ("**Nataverlal**"), Rashilaben Patel ("**Rashilaben**"), and Mayur Patel ("**Mayur**") (collectively, "**Plaintiffs**") by and through undersigned counsel, for their Complaint, state and allege the following:

## PARTIES

1. SSM is a Missouri limited liability company.

2. Nataverlal, Rashilaben, Mayur, and the fourth member of SSM are all citizens of Kansas.

3. One or more of Plaintiffs were the owner of the real property the subject of this action.

4. The City of Independence, Missouri (the "**City**") is a charter city that can be served with process by delivering the same to its City Clerk at 111 E. Maple Avenue, Independence, Missouri 64050.

5. To the extent it is claimed the Regulated Industries Division of the Community Development Department (the "**RID**"), or the Community Development Department (the "**CDD**"), are bodies politic separate and independent of the City and/or one another, which they are not, then Plaintiffs name the RID and the CDD as defendants, and they can be served with process by delivering the same to the City Clerk at 111 E. Maple Avenue, Independence, Missouri 64050.

6. Jill M. Dodson ("**Dodson**") is the supervisor of the RID. To the extent necessary, Plaintiffs name Dodson as a defendant in her official capacity, and she can be served with process by delivering the same to Dodson wherever she may be found.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction arising from diversity jurisdiction pursuant to 28 U.S.C. § 1332 in that Plaintiffs are all citizens of Kansas and the City is a citizen of Missouri.

8. The amount in controversy exceeds $75,000. The actions for which complaint is made: (1) eliminated the ability of SSM, Nataverlal, and Mayur (collectively, the "**License Holder**") to lawfully operate the motel known as "Sports Stadium Motel" (the "**Motel**"), which had a value exceeding $75,000 before these actions but $0.00 after these actions; and (2) reduced the fair market value of the real property located at 9803 East U.S. Highway 40, Independence, Missouri upon which the Motel had been operating (the "**Property**") by an amount in excess of $75,000.

9. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under federal law and the United States Constitution.

10. Venue is proper in this district because is a judicial district in which: (1) the City resides; (2) a substantial part of the events or omissions giving rise to these claims occurred; and/or (3) a substantial part of the Property is located.

## FACTUAL ALLEGATIONS

11. One or more Plaintiffs owned the Property, which has the following legal description:

> Lots 163 and 164, EAST HOLLYWOOD, a subdivision partly in Independence and partly in Kansas City, and wholly in Jackson County, Missouri, according to the recorded plat thereof; together with (a) all of the east 25 feet of Overton Avenue, adjoining said Lot 164 on said Lots westerly side, lying within the City Limits of the City of Independence, and (b) all of Grantor's rights, title and interest in and to Overton Avenue lying adjacent to said Lot 164.

12. The City issued the License Holder a business license.

13. SSM operated the Motel from the Property.

14. By letter dated January 17, 2025, the City provided notice to the License Holder: (1) that a mandatory administrative hearing had been scheduled; and (2) the purpose of the hearing was the alleged violation of "City Code Sec. 5.01.023. – License denied, suspension or revocation". A true and accurate copy of this letter is attached hereto as Exhibit A and incorporated by reference the same as though set forth fully herein. Dodson signed this letter as the supervisor of the RID of the CDD of the City.

15. By letter dated January 29, 2025, SSM made written request to the City provide SSM with documents responsive to 19 requests. A true and accurate copy of this letter is attached hereto as Exhibit B and incorporated by reference the same as though set forth fully herein.

16. By letter dated April 30, 2025, the City: (1) notified the License Holder of the new hearing date; and (2) the purpose of the hearing was the alleged violation of "City Code Sec. 5.01.023 – License denied, suspension or revocation". A true and accurate copy of this letter is attached hereto as Exhibit C and incorporated by reference the same as though set forth fully herein. Dodson signed this letter as the supervisor of the RID of the CDD of the City.

17. City Code Sec. 5.01.023 governs the revocation of a business license, which is at the heart of the claims in this action, and reads in relevant part:

> B. Suspension or Revocation:
>
> 1. Basis for Suspension or Revocation. Any business license issued by the City pursuant to this chapter of the City Code may be suspended or revoked for good cause by the issuing authority upon a finding that one or more of the following conditions exist:
>
> [list of 16 conditions]
>
> 2. Procedures to Suspend or Revoke a Business License.

> a. The City is empowered, through an Administrative Hearing, to revoke or suspend a license issued under the provisions of this chapter of the Code.
>
> b. The hearing(s) shall follow the Administrative Hearing Procedures for Revocation or Suspension of Business and Other Business Licenses established and amended from time to time by the Community Development Department and in effect at the time of the hearing.

City Code Sec. 5.01.023(B) (the "**Revocation Ordinance**"). A true and correct copy of the Revocation Ordinance is attached hereto as Exhibit D and incorporated by reference the same as though set forth fully herein. By mandating the certain procedures be followed before a business license can be revoked, the Revocation Ordinance serves as an independent source making a business license a protected property interest.

18. The City's letter did not provide legally adequate and constitutionally sufficient notice of the basis for the proposed suspension or revocation of the License Holder's business license.

19. Regarding the first alleged basis, though the letter identified eight alleged health code violations, the City failed to provide any notice of how: (1) such alleged violations were chronic; and (2) any such alleged violations created a public nuisance that may injuriously affect the public health, safety, or welfare of others, or that unnecessarily affects the adequate allocation of public safety resources.

20. Regarding the second alleged basis, the letter failed to provide any information as the predicate other than reciting "excessive" calls for service were placed to the police department. For example, the City failed to identify: (1) what "business activity" served as the predicate for this basis; (2) which ordinance, rule or law of the City, State, or Federal government were allegedly violated, when, and by whom; or (3) whether and how the License

Holder permitted, allowed, or caused the unidentified "business activity in violation of" the unidentified ordinance, rule or law of the City, State, or Federal government.

21. Regarding the third alleged basis, the City merely reproduced the text of the subsection of the ordinance. The City made no attempt to identify any factual allegations the City contended served as the predicate. For example, the City failed to identify: (1) when, how, and why the business operation became unlawful; (2) which code, rule or law of the City, State, or Federal government prohibits the business operation; and (3) when, how, and why the business operation was prohibited by any code, rule or law of the City, State, or Federal government.

22. In response to a request from the License Holder for the "Administrative Hearing Procedures for Revocation or Suspension of Business and Other Business Licenses" referenced in the ordinance, the City provided a copy of a document titled "City of Independence, Missouri Administrative Hearing Procedures for Revocation or Suspension of Business and Other Occupation Licenses" (the "**Procedures for Revocation**"). A true and correct copy of the Procedures for Revocation is attached hereto as Exhibit E and incorporated by reference the same as though set forth fully herein.

23. The first problem is the title of the document the City provided is different than the title recited in the ordinance. Therefore, Plaintiffs were not sure if these procedures even applied. The second problem is this document recites a license officer has the authority to revoke, suspend, or deny a license as authorized by City Code Sec. 5.01.017. A true and correct copy of this code section is attached hereto as Exhibit F and incorporated by reference the same as though set forth fully herein. But this code section provides no such authorization because its

subject matter is prorating license fees. Therefore, the procedures set forth in this document were enacted without authority.

24. What is clear, however, is the City recognized the importance of acting in compliance with procedural due process because the City expressly recites that is the very purpose of the Procedures for Revocation. By acknowledging that procedural due process protections apply to a proceeding to suspend or revoke a business license, the Procedures for Revocation serve as an independent source making a business license a protected property interest.

25. Though these procedures provide no meaningful guidance, they do require an administrative hearing regarding revocation or suspension of a business license is to be held on either a Tuesday or Thursday morning. Here, the City violated these procedures by scheduling and conducting the hearing for the License Holder on a Wednesday.

26. The City violated the due process rights of the License Holder by refusing to take action necessary to allow the License Holder to meaningfully prepare for and participate in the hearing.

27. For example, the License Holder served document requests on the City, but the City refused to produce most of the documents sought, which prevented the License Holder from meaningfully preparing for and participating in the hearing.

28. For example, the License Holder requested that subpoenas be issued for depositions and for the hearing, but the City refused to issue any subpoenas or produce its representatives for depositions. Instead, the City claimed that the License Holder had no right to take depositions or issue subpoenas, whether for the appearance of a person at a deposition or the hearing.

29. At the hearing, the City abandoned any arguments for revocation except for: (1) the alleged health code violations; and (2) the amount of police activity in the area.

30. In support of the health code violations, Travis Parker with the City's health department testified: (1) he found some non-critical violations; but (2) all alleged violations did not exist by the time of his reinspection.

31. The testimony of Mr. Parker not only fails to prove the City's allegations but rather conclusively negates them. The basis for the revocation was the alleged existence of "chronic" conditions. Mr. Parker's testimony proves no alleged condition was chronic. The testimony of Mr. Parker did nothing to prove the alleged condition caused or tended to create a public nuisance. If anything, Mr. Parker's testimony proved: (1) there was no public nuisance resulting from the alleged non-critical violations; and (2) such alleged conditions did not "injuriously affect" the public health.

32. In support of the amount of police activity, the City's Police Deputy Chief Michelle Sumstad testified: (1) there is no standard for what constitutes an excessive number of calls for service; (2) she does not know how the Motel is operated; (3) she does not know what the License Holder was allegedly doing wrong to cause the amount of police activity in the area; (3) she included traffic stops in the number of calls for service at the address of the Motel; (4) there is an abandoned bar next door to the Motel that could attract homeless people, thereby increasing police activity; (5) until late 2024, there was a homeless encampment in the wooded area behind the Motel, and the inhabitants of the encampment could be the cause for the police activity; (6) there is a liquor store near the Motel that is the cause of some police activity; and (7) she has no idea what number of the calls for service were initiated by guests of the Motel.

33. In her testimony, Deputy Chief Sumstad did not identify: (1) any "business activity" of the License Holder; (2) the basis for alleging the License Holder permitted, allowed, or caused its business activity to be in violation of any ordinance, rule or law of the City, State, or Federal government; and (3) when, for what length of time, or how the License Holder's business activity allegedly violated any ordinance, rule or law of the City, State, or Federal government.

34. The testimony of Deputy Chief Sumstad did not prove any ground to revoke the License Holder's business license. For example, she admitted she does not know: (1) how the Motel is operated; and (2) what the License Holder was allegedly doing wrong. For example, she admitted the police activities and calls could not be traced by to the License Holder or the Motel but rather could be the result of an abandoned bar, a liquor store, homeless encampment, and traffic stops. For example, she admitted she could not identify any number of calls for service initiated from the Motel. Therefore, Deputy Chief Sumstad admitted she knows of no "business activity" of the License Holder committed in violation of the law, and she is unable to allocate any amount of police activity or number of service calls to the License Holder or the Motel.

35. Following the hearing, on June 11, 2025, an order was issued revoking the business license of the License Holder (the "**Revocation Order**"). A true and correct copy of the Revocation Order is attached hereto as Exhibit G and incorporated by reference the same as though set forth fully herein. Dodson signed the Revocation Order as the "Hearing Officer". Not only was the evidence presented during the hearing insufficient to prove any ground to revoke the License Holder's business license, but also the process and procedure beginning with

notice and continuing through the hearing violated the constitutional rights of the License Holder.

36. In addition to those constitutional violations already identified, the manner in which the hearing was conducted violated the constitutional rights of the License Holder in that Dodson, the supervisor of the RID, simultaneously served as both the prosecutor (an official of the executive branch) and the judge (an official of the judicial branch). For example, Dodson presented the City's case against the License Holder for the revocation of the business license. But Dodson also ruled on all objections during the hearing and consistently admitted testimony, documents, and evidence in violation of Missouri evidentiary rules and over the objections of the License Holder.

37. The United States and Missouri constitutions provide for the separation of powers and safeguards to ensure a fair and impartial trial. By Dodson being permitted to simultaneously acting as the prosecutor and judge, the City violated the constitutional rights of the License Holder, and thus the order revoking the License Holder's business license is void and subject to vacatur.

38. The City's attempt to revoke a business license has not been limited to the License Holder. Rather, the City is actively targeting lodging facilities owned, directly or indirectly, by persons of Asian/Indian descent. Upon information and belief, the City has not sought to revoke the business licenses of lodging facilities owned, directly or indirectly, by persons not of Asian/Indian descent. Upon information and belief, the City is discriminating against persons of Asian/Indian descent in targeting and selectively invoking the Revocation Ordinance to revoke business licenses. There is no rational basis for the difference of the City's

treatment of lodging facilities owned, directly or indirectly, by persons of Asian/Indian descent and persons not of Asian/Indian descent.

39. The City violated rights of the License Holder guaranteed by the constitution and laws of the State of Missouri, including but not limited to:

    a. Under Mo. Const. Art. I, § 2, "*all persons . . . are entitled to equal rights and opportunity under the law.*" Under Mo. Const. Art. I, § 10, "*no person shall be deprived of life, liberty or property without due process of law.*" Under Mo. Const. Art. I, § 26, "*private property shall not be taken or damaged for public use without just compensation.*"

    b. Under Mo. Const. Art. I, § 26 "*That private property shall not be taken or damaged for public use without just compensation…the property shall not be disturbed or proprietary rights of the owner therein divested.*"

    c. The Administrative Hearing Procedures of the City of Independence state (among other things) "*The purpose of these administrative procedures is to ensure fundamental procedural due process protection to the individual or business entity holding a liquor or business license.*" In addition, the City's procedures require "*All evidence presented…needs to be clear, concise and admissible in a court of law*".

40. The City violated rights of the License Holder guaranteed by the constitution and laws of the United States of America, including but not limited to:

    d. The Fifth Amendment;

    e. The Fourteenth Amendment; and

    f. 42 U.S.C. § 1983.

41. Plaintiffs have suffered damages on account of the unlawful revocation of the License Holder's business license even when the Revocation Order is vacated. The operation of the Motel was immediately ended upon the issuance of the Revocation Order. Therefore, even when the Revocation Order is vacated, Plaintiffs will have suffered damages in the form of the profits lost between the date of the issuance of the Revocation Order and the date the Revocation Order is set aside.

42. On November 4, 2024, the City drafted an amendment to the existing business license ordinances stating that:

> The applicant of any similar use proposed on a property where a previous business license has been revoked shall submit a special use permit application in accordance with Chapter 14, Article 7 prior to submitting a business license application.

Independence City Code § 5.01.023(B)(3)(b).

43. The Property is zoned C-2.

44. Independence City Code § 14-301 contains a table denoting whether specific uses within each zoning category are either: (a) permitted; (b) special use permit required; (c) conditional uses; or (d) not allowed.

45. Hotels are listed as a permitted use in zoning district C-2. Independence City Code § 14-301.

46. By amending the business license ordinance to engraft the requirement for a special use permit even in C-2 zoning, the City has effectively rewritten its zoning laws – without following any of its own procedures or ordinances for doing so – by requiring the Property to have a special use permit in order for it to be used as a hotel.

47. Under Missouri law, a pre-existing, lawful, nonconforming use is a vested property right that cannot be abrogated by a newly enacted ordinance unless just compensation is

paid because otherwise there would be an unconstitutional taking. By enacting this new ordinance, the City has changed the zoning of the Property to not allow its use as a hotel unless a special use permit is issued even though the Property as a matter of right can be used for a hotel. The City failed to pay just compensation to Plaintiffs. Therefore, the City has committed an unconstitutional taking.

## COUNT I
## Judicial Review of Administrative Agency Action

48. Paragraphs 1 through 47 are hereby incorporated as though fully set for the herein.

49. The License Holder seeks judicial review of the Revocation Order.

50. The Revocation Order is a final decision from which an appeal may be made, pursuant to 5.01.024 of the City Code and R.S.Mo. Chapter 536.

51. The License Holder has exhausted all available administrative remedies.

52. For the reasons identified above, the initiation and completion of the proceeding that culminated in the issuance of the Revocation Order violated the constitutional and statutory rights of the License Holder. Without limiting the foregoing, the letters notifying the License Holder of the proposed revocation did not: (1) adequately identify the basis for the proposed revocation; (2) afford the License Holder with a reasonable period of time within which to address any alleged deficiencies; and (3) provide a review of progress towards compliance.

53. In addition, the City failed to admit evidence sufficient to support the revocation of the License Holder's business license.

54. To the contrary, the evidence admitted at the hearing (much of which was over the objections of the License Holder, which Dodson in her dual role of prosecutor and judge overruled, and which should not even have been considered): (1) conclusively negated the

alleged basis for revocation (e.g., Mr. Parker testified that the alleged non-critical health code violations were remedied, not chronic); (2) immaterial and irrelevant (e.g. Deputy Chief Sumstad testified regarding the number of service calls but not to the "adequate allocation of public safety resources" or how these service call "unnecessarily" affected the "adequate allocation of public safety resources"; and (3) inconclusive (e.g., Deputy Chief Sumstad could not identify any business activity of the License Holder and could not testify as to the number of service calls resulting from the Motel as opposed to other nearby businesses and properties, the homeless encampment, and traffic stops). As such, the Revocation Order is arbitrary, capricious, unreasonable, oppressive, and confiscatory, and thus should be vacated on evidentiary grounds.

55. The Missouri Constitution, Article V, § 18 provides that all findings, decisions, rules and orders of any administrative officer or body existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights, shall be subject to direct review by the Court as provided by law. The License Holder seeks review as authorized by this statute and any other statute, law, or ordinance authorizing review.

WHEREFORE, the License Holder prays the Court render and sign judgment vacating the Revocation Order, compelling the City to reissue the License Holder's business license, and awarding all relief requested herein and attorney fees, costs, and pre- and post-judgment interest as well as all such other and further relief, both general and special, at law or in equity, to which the License Holder may be entitled.

## COUNT II
### Declaratory Judgment

56. Paragraphs 1 through 55 are hereby incorporated as though fully set for the herein.

57. A justiciable controversy exists between the parties regarding the License Holder's right to operate the Motel from the Property.

58. Plaintiffs seek declaratory judgments that:

    a. The Revocation Order is arbitrary, capricious, unreasonable, oppressive, and confiscatory, and thus invalid, unlawful, and void.

    b. The Revocation Order was issued in violation of the constitutional and statutory rights of the License Holder.

59. In addition, Plaintiffs seek supplemental and incidental relief in the form of the vacatur of the Revocation Order and compelling the City to reissue the License Holder's business license.

WHEREFORE, Plaintiffs pray the Court render and sign judgment announcing such declaratory judgments, vacating the Revocation Order, compelling the City to reissue the License Holder's business license, and awarding all relief requested herein and attorney fees, costs, and pre- and post-judgment interest as well as all such other and further relief, both general and special, at law or in equity, to which the License Holder may be entitled.

## COUNT III
### Inverse Condemnation

60. Paragraphs 1 through 59 are hereby incorporated as though fully set for the herein.

61. The Motel has been operated from the Property since September 1, 1982. Upon information and belief, the City had not enacted any ordinances regarding business licenses at this time, and any zoning ordinances in effect at this time did not limit the ability to operate the Motel from the Property.

62. The City did not enact Article 1 of Chapter 5 of the City's Code (requiring business licenses) until 2023. City Code § 5.01.023 is contained within this Article (which is the section under which the City purported to issue the Revocation Order), but it was not enacted until 2024. The City did not enact Article 3 of Chapter 5 of the City's Code (pertaining to business licenses for lodging facilities) until 2023, which the City then amended in its entirety in 2025. The lawful ability of the City to enact these ordinances is doubtful as the combination of them have caused damage to the protect property interest of Plaintiffs in the Property.

63. By enacting City Code § 5.01.023(B)(3)(b), which engrafts the requirement for a special use permit for use as a hotel even in C-2 zoning where a hotel is expressly permitted, the City has tethered its business license ordinances with its zoning ordinances. But Plaintiffs have a protected property interest in the permitted uses of the Property that prohibits zoning changes that affect these permitted uses. Therefore, the City has committed an unconstitutional taking of the Property in that the City has not paid Plaintiffs just compensation.

64. In addition, the City has committed an unconstitutional taking of the Property in that the City has not paid Plaintiffs just compensation but the City has nevertheless taken the Property even though: (1) any claimed use of the City's police powers are not a permissible use of police powers; and (2) the City's enforcement of such putative police power (a) does not substantially advance, (b) is not rationally related to legitimate state interests, (c) has a severe economic impact upon the owner of the Property, (d) interferes with the owner of the Property's distinct investment-backed expectations, (e) is arbitrary, capricious, unreasonable, oppressive, and confiscatory, (f) as applied, reflects a discriminatory intent to single out certain properties of a general class and properties owned, directly or indirectly, by persons of Asian/Indian descent,

and (g) results in a compensable taking under the United States and Missouri constitutions and statutes.

65. In addition, the City has committed an unconstitutional taking of the Property in that the City has not paid Plaintiffs just compensation but the City has nevertheless taken the Property under circumstances in which the City's actions constitute illegal spot zoning that interferes with protected property rights of Plaintiffs to operate the Motel from the Property.

66. In addition, the City has committed an unconstitutional taking of the Property by issuing the Revocation Order and shutting down the operation of the Motel. Plaintiffs have sought the vacatur of the Revocation Order, in which case the City shall have unconstitutionally taken the Property on a temporary basis, and Plaintiffs are entitled to recover the lost revenues during this period of time (because the revenues of the Motel service ongoing liabilities associated with the Property, lost profits alone are insufficient to adequately compensate Plaintiffs).

67. Plaintiffs seek judgment for actual damages (including damages to the remainder), lost revenues (or alternatively, lost profits), attorney fees, costs, and pre- and post-judgment interest.

WHEREFORE, Plaintiffs pray the Court render and sign judgment awarding all relief requested herein and actual damages, lost revenues (or alternatively, lost profits), attorney fees, costs, and pre- and post-judgment interest as well as all such other and further relief, both general and special, at law or in equity, to which Plaintiffs may be entitled.

## COUNT IV
## 42 U.S.C. § 1983

68. Paragraphs 1 through 67 are hereby incorporated as though fully set for the herein.

69. As identified above, the City has violated the rights of Plaintiffs afforded under the federal constitution, including but not limited to the Fifth Amendment (the taking of property) and the Fourteenth Amendment (due process).

70. In addition, the City has violated the rights of the Plaintiffs under the Equal Protection Clause of the Fourteenth Amendment to the federal constitution, which requires that persons in similar situations must be treated equally. In violation of this mandate, the City has treated Plaintiffs and others of Asian/Indian descent differently from others similarly situated who are not of Asian/Indian descent.

71. For example, the City has targeted lodging facilities owned, directly or indirectly, by persons of Asian/Indian descent, including Plaintiffs, for revocation of their respective business license even though, upon information and belief, other lodging facilities owned, directly or indirectly, by persons not of Asian/Indian descent have conditions or attributes the City alleges Plaintiffs and others of Asian/Indian descent have.

72. Plaintiffs and others of Asian/Indian descent are recognized as a protected class under the law. The City's actions in targeting lodging facilities owned, directly or indirectly, by Plaintiffs and others of Asian/Indian descent have no rational basis. Upon information and belief, the actions of the City were taken intentionally and motivated by a discriminatory purpose, not merely incidentally or the result of a facially neutral policy.

73. Plaintiffs seek judgment for actual damages (including damages to the remainder), lost revenues (or alternatively, lost profits), attorney fees, costs, and pre- and post-judgment interest, plus equitable relief including the vacatur of the Revocation Order and compelling the City to to reissue the License Holder's business license.

WHEREFORE, Plaintiffs pray the Court render and sign judgment awarding all relief requested herein and actual damages, lost revenues (or alternatively, lost profits), attorney fees, costs, and pre- and post-judgment interest as well as all such other and further relief, both general and special, at law or in equity, to which Plaintiffs may be entitled.

## JURY DEMAND

The Plaintiffs demand a trial by jury for all issues so triable.

Respectfully submitted:

**BROWN & RUPRECHT, PC**

By: */s/ Brian L. Palmer*
Brian L. Palmer, MO Bar No. 66132
2323 Grand Blvd., Ste. 1100
Kansas City, MO 64108
(816) 292-7000 Telephone
(816) 292-7050 Facsimile
Emails: bpalmer@brlawkc.com
**ATTORNEYS FOR PLAINTIFFS**